UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Sarojini Daram, | **Civil No. 11-CV-3266 (PJS/SER)** |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Jeffrey J. Ptak M.D., P.C., | |
| Defendant. | |

---

Sarojini Daram, *pro se*, P.O. Box 14225, Minneapolis, Minnesota 55414.

John M. Degnan, Jessica J. Stomski, Esqs., Briggs & Morgan, PA, 80 South Eighth Street, Suite 2200, Minneapolis, Minnesota, 55402, and Peter G. Kline, Crawford & Kline PLC, 1920 East Southern Avenue, Suite 101, Tempe, Arizona, 85282 for Defendant.

---

STEVEN E. RAU, United States Magistrate Judge

This case is before the Court on Defendant's Motion to Dismiss or Alternative Motion for Summary Judgment [Doc. No. 9] and Plaintiff's Motion to Compel [Doc. No. 21]. This matter has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons set forth below, the Court recommends that Defendant's Motion be granted and Plaintiff's Motion be denied as moot.

**I.    BACKGROUND**

    **A.  Underlying Facts**

Plaintiff Sarojini Daram ("Daram"), a Minnesota resident, contacted Arizona plastic surgeon Dr. Jeffrey J. Ptak ("Ptak") in 2007 to inquire about a procedure called periorbital fat grafting. (Compl., "Minnesota Compl.") [Doc. No. 1 at ¶¶ 7–8]. Ptak explained that the fat grafting procedure involved the transfer of fat to the areas around a patient's eyes for aesthetic

1

enhancement. (November 5, 2007 Operative Note, Ex. 3, Attached to Minnesota Complaint). Ptak also advised Daram that no risks were associated with the surgery, but temporary swelling and bruising was possible. (*Id.* at ¶ 8). Daram subsequently flew to Arizona to undergo the procedure. (*Id.* at ¶ 9).

During a preoperative meeting with Daram, Ptak again explained that there were no risks associated with the fat grafting procedure. (*Id.* at ¶ 10). At the end of the meeting, however, Ptak mentioned that Daram "might get a lump." (*Id.*). When Daram asked what she should do if a lump developed, Ptak explained that he would treat it with a cortisone injection and the lump would disappear. (*Id.*). Daram did not understand the potential for lumps to be a separate risk; rather, she believed the lumps to which Ptak referred were a component of the swelling he had mentioned previously. (*Id.*).

In anticipation of the procedure, Daram signed a consent form that listed only the general risks associated with all surgeries. (*Id.* at ¶ 11). Ptak performed the fat grafting surgery on November 5, 2007. (*Id.* at ¶ 12). Approximately one month later, Daram had her portrait taken to capture the results of her surgery. (*Id.* at ¶ 13(1)). She emailed one of the photographs to Ptak, who was "ecstatic" with the results, using the photo for an advertisement. (*Id.*).

In early March 2008, Daram contacted Ptak complaining about lumps forming around her eyes. (*Id.* at ¶ 13(2)). On March 20, 2008, Daram returned to Arizona so Ptak could treat the lumps. (*Id.* at ¶ 14). Ptak told her that cortisone injections would make a hole in her skin and "persuaded" her to come in for a second operation to treat the lumps and achieve her desired result. (*Id.*). On June 18, 2008, Ptak performed a second fat grafting surgery and unsuccessfully attempted to treat the existing lumps. (*Id.* at ¶ 15). In the end, eight or more lumps developed under the skin around Daram's eyes. (*Id.* ¶ 16).

### B. Procedural History

#### 1. Arizona Lawsuit

Daram filed a *pro se* complaint in the Superior Court of Arizona in Maricopa County on September 29, 2008 (the "Arizona Lawsuit"). (Arizona Compl., Ex. A, Attached to Affidavit of Peter G. Kline in Supp. of Mot. to Dismiss or Alternative Mot. for Summ. J., "Kline Aff.") [Doc. No. 12]. The Arizona Lawsuit alleged that Ptak failed to disclose the risks associated with the fat grafting procedure and, consequently, he did not secure her informed consent to perform the surgery. (*Id.*). Specifically, Daram asserted a claim for medical malpractice and alleged that Ptak

> [g]rossly over-corrected my facial fat without consent in November, 2007. The defendant misled me by stating that his fat grafting would make me look like I did when I was younger. The defendant intentionally with-held information about the procedure to draw me in. The defendant deliberately manipulated me into having another surgery in June, 2008 for no justifiable reason.

(*Id.* at 1). Dr. Ptak answered on November 4, 2008, denying all of the claims in Daram's complaint and arguing that the treatment provided was within the standard of care. (Arizona Answer, Ex. B, Attached to Kline Aff.).

After five months of discovery, Ptak moved for summary judgment on March 2, 2010. (Statement of Facts in Supp. of Def.'s Mot. for Summ. J., Ex. C, Attached to Kline Aff.); (Pl.'s Mem. in Opp. to Mot. for Summ. J., Ex. D, Attached to Kline Aff.); (Resp. to Mot. for Summ. J., Ex. E, Attached to Kline Aff.); (Def.'s Reply to Pl's Resp. to Def.'s Mot. to Summ. J., Ex. F., Attached to Kline Aff.). Oral argument on Ptak's motion was held on April 13, 2010, and the Arizona court granted the motion on May 20, 2010. (Under Advisement Ruling on Def.'s Mot. for Summ. J., Ex. G, Attached to Kline Aff.). The Arizona court noted in its ruling that

> in the context of a lack of informed consent claim, the failure of a physician to disclose a known risk of surgery does not, standing alone, constitute sufficient

> grounds for a medical negligence claim. More is required. If an undisclosed risk forms the basis for the action, it must have **materialized** to become actionable. Otherwise, the omission is legally without consequence.

(*Id.* at 3) (emphasis in original). The court found there was "no actionable medical negligence claim" because Daram failed to establish a prima facie case due to "a lack of evidence that [Ptak] violated the applicable standard of care and/or that the alleged deviation was a proximate cause of injury." (*Id.*). The court further concluded that Ptak was entitled to summary judgment because Daram "was pre-operatively informed of the surgical risk which she now alleges post-operatively materialized." (*Id.*). The court dismissed Daram's claims with prejudice and entered judgment in Ptak's favor. (*Id.*); (Arizona Judgment, Ex. I, Attached to Kline Aff.).

Daram moved for reconsideration, alleging that the Arizona court had not properly considered expert evidence. (Mot. to Recons. Based on the Fact that Def. Arranged the Exam by Dr. Christianson and Based on Dr. Mardini's Record, Ex. H, Attached to Kline Aff.). Daram also moved for a new trial, arguing that that during oral argument on the summary judgment motion, "Defendant's counsel, Peter Kline, made an admission that the lumps are a structural part of the graft."[1] (Mot. for New Trial, Ex. J at 1, Attached to Kline Aff.). Daram claimed that this admission was significant because Ptak's counsel previously attempted to mislead the court

---

[1] The pertinent portion of the transcript from the summary judgment hearing is as follows:

> Mr. Kline: Well, we would first suggest that frankly Miss Daram's characterization of her issues at this point are trumped by what the experts say because she can't testify about what would be a recognized complication versus just a consequence of this particular procedure.
> For example, she feels underneath her skin some irregularities. She thinks that's a huge complication but plastic surgeons who do this would suggest, and I'm using this hypothetically, that that's a natural result and something that happens.

(Reporter's Trans. of Proceedings, Excerpt of April 13, 2010 Oral Argument, Ex. 10 at 5, Attached to Minnesota Compl.) [Doc. No. 1].

4

to believe that the lumps were a "risk" or "complication" of the surgery, rather than a "consequence." (Pl.'s Reply of Mot. for New Trial, Ex. L at 1, Attached to Kline Aff.). She also argued that the court "misrepresented" photographs she submitted into evidence as "illegible black and white photographs." (*Id.* at 2). The court denied both motions and noted that Daram "exhausted all post-judgment relief in this matter." (Nov. 10, 2010 Order, Ex. M, Attached to Kline Aff.); (Dec. 22, 2010 Order, Ex. N, Attached to Kline Aff.). No evidence exists that Daram took steps to seek further review of the Arizona court's grant of summary judgment through appellate procedures.

### 2. Minnesota Action

On November 4, 2011, over fifteen months after the Arizona court entered judgment in favor of Ptak, Daram filed this case *pro se*, alleging medical malpractice, breach of contract, and fraud. (Minnesota Compl. at ¶¶ 22, 28, 31). She first argues that Ptak's conduct fell below the applicable standard of care because he failed to inform her preoperatively that (1) "lumps and irregularities were a consequence of his fat grafting surgery" and (2) "lumpiness and firmness [were] risks" associated with the surgery. (*Id.* at ¶¶ 22–23). Second, Daram claims that Ptak's failure to provide written notice of the risks associated with the fat grafting procedure constitutes a breach of contract because Ptak's surgical consent form provides that "[t]he specific risks and complications of each surgical procedure have been explained elsewhere in this preoperative packet." (*Id.* at ¶¶ 26–28). Finally, Daram alleges fraud when Ptak led her to believe there were no risks associated with the surgery beyond swelling and bruising because he knew lumps were a consequence of the surgery. (*Id.* at ¶¶ 30–31).

### i. Ptak's Motion to Dismiss or Alternative Motion for Summary Judgment

In lieu of answering, Ptak moved to dismiss or, in the alternative, for summary judgment. (Def.'s Mot. to Dismiss or Alternative Mot. for Summ. J., "Def.'s Mot.") [Doc. No. 9 at 1]. In support of his Motion, Ptak submitted the affidavit of Peter G. Kline ("Kline"), his Arizona attorney in the Arizona Lawsuit, and Arizona Lawsuit filings as exhibits. (Aff. of Peter G. Kline in Supp. of Dr. Ptak's Mot. to Dismiss or Alternative Mot. for Summ. J.) [Doc. No. 12]. Ptak requests that the Court take judicial notice of the Arizona Lawsuit's pleadings and judgments in considering his Motion to Dismiss, but also insists that if the Court considers evidence "outside of the pleadings" summary judgment is the appropriate remedy. (Def. Mem. at 5).

In response, Daram asserts that her Minnesota Complaint contains new legal theories and relies on new facts not before the Arizona court. (Pl.'s Mem. at ¶¶ 1, 4). Specifically, Daram argues that claims made in Paragraph 22[2] are based on new evidence that was unavailable until discovery in the Arizona Lawsuit closed and the case was dismissed. (Mem. of Law in Opp. to Def.'s Mot. to Dismiss or Alternative Mot. for Summ. J., "Pl.'s Mem.") [Doc. No. 18 at ¶ 1]. Daram notes that Ptak's Motion and Memorandum fail to respond to the allegations in Paragraph 22, and she contends that this was an evasive move, intended to withhold relevant information from the Court. (*Id.*). She alleges that Ptak hopes to mislead the Court to believe that the lumps are no more than a risk of the surgery and the lumps were never documented. (*Id.*). The Federal Rules of Civil Procedure provide that a defendant may answer or otherwise respond to a complaint with a Rule 12 motion. *See* Fed. R. Civ. Pro. 12. If a defendant files a Rule 12(b)(6) Motion to Dismiss, he or she is not required to simultaneously file an answer responding to the

---

[2]   Paragraph 22 of the Minnesota Complaint states: "Defendant uses cysts or lumps underneath the skin to structurally add volume in the skin and he fell below the medical standard of care when he failed to inform Plaintiff preoperatively that lumps and irregularities were a consequence of his fat grafting surgery." (Minnesota Compl. at ¶ 22).

allegations made in a complaint. *See id.* Although Ptak did not file an answer, he complied with the Federal Rules by exercising his right to respond by filing the current Motion.

### ii. Daram's Motion to Compel Disclosure of Evidence

On March 15, 2012, Daram requested an order directing Ptak to "file with the court a sworn affidavit in which explains if nodular masses (lumps) underneath the skin are a consequence of his fat grafting surgery, are a structural part of the fat graft, and are used to give skin volume." (Mot. to Compel Disclosure of Evidence) [Doc. No. 21 at 1]. Oral argument on Daram's Motion was held on the same date as Ptak's Motion to Dismiss or Alternative Motion for Summary Judgment. (Civil Mot. Mins., *Sarojini Daram v. Jeffrey J. Ptak M.D., P.C.*, (11CV3266), May 3, 2012) [Doc. No. 29].

## II. DISCUSSION

### A. Applicable Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) must be treated as a motion for summary judgment under Rule 56 where matters outside the pleadings are submitted and not excluded by the court. *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992) (citations omitted). On a motion to dismiss for failure to state a claim, however, the court may consider materials outside the complaint the pleadings necessarily embraced the materials. *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (citation and quotation omitted); *Piper Jaffray v. Nat'l Union Fire Insur. Co.*, 967 F. Supp. 1148, 1152 (D. Minn. 1997) (No. 4-96-1143 JRT/RLE) (citing *Vizenor v. Babbitt*, 927 F. Supp. 1193, 1198 (D. Minn. 1996) (Nos. 6-95-230 RHK/RLE, 5-95-256 RHK/RLE)). Such materials may include copies of underlying pleadings and all documents they incorporate by reference. *Piper Jaffray*, 967 F. Supp. at 1152. In addition, materials contained in the public record may be considered in

deciding a motion to dismiss. *Deerbrook Pavilion, LLC v. Shalala*, 235 F.3d 1100, 1101 (8th Cir. 2000); *Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999); *see Anderson v. County of Jackson*, No. 11cv2660 (ADM/AJB), 2012 WL 2003525, at *4 (D. Minn. Apr. 4, 2012) (considering declaration and attached exhibits where the declaration contained no fact assertions and the exhibits were all court documents that were matters of public record). In contrast, "written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleading," may be construed as "matters outside the pleadings," requiring treatment of the motion as one for summary judgment. *Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 948 (8th Cir. 1999) (citation omitted). The court has "complete discretion" in deciding whether to accept material beyond the pleadings that is offered in support of a Rule 12(b)(6) motion. *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 701 (8th Cir. 2003) (citation omitted).

Ptak's Motion relies exclusively on the Minnesota Complaint and matters of public record from the Arizona Lawsuit, including the filings, memoranda, and rulings. To the extent arguments are made concerning matters outside those documents, they were not considered and the Court evaluated Ptak's Motion under Rule 12(b)(6).

### B. Review Under Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss for failure to state a claim, allegations in the complaint must be taken as true and the pleadings are construed in the light most favorable to the plaintiff. *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 445 (8th Cir. 1995) (citations omitted); *Vizenor*, 927 F. Supp. at 1197. Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the plaintiffs. *Ossman v. Diana Corp.*, 825 F. Supp. 870, 879–80 (D. Minn. 1993) (No. 4:92-cv-976 DSD/FEB). Further, plaintiffs are afforded "every reasonable inference"

8

drawn from "well-pleaded" facts and allegations in the complaint. *Id.* at 880. Dismissal of a complaint is only appropriate if it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.* (citation omitted).

### C. Claim Preclusion[3]

Under the doctrine of claim preclusion, a judgment on the merits in an earlier suit bars a second suit involving the same parties based on the same cause of action. *Baker by Thomas v. General Motors Company*, 522 U.S. 222, 233 n.5 (citation omitted). Pursuant to the Full Faith and Credit Clause and implementing statutory provisions, federal courts must give a state court judgment the same preclusive effect as would be given by the rendering state's courts. U.S. Const. art. IV § 1; 28 U.S.C. § 1783; *see also Gas Aggregation Servs., Inc. v. Howard Avista Energy, LLC*, 458 F.3d 733, 737 (8th Cir. 2006). In doing so, the federal court must apply the law of the forum that issued the first judgment. *Ashanti*, 666 F.3d at 1151 (citation omitted). Accordingly, Arizona's claims preclusion law governs this analysis.

Under Arizona law, claim preclusion bars a subsequent suit when a prior suit (1) was based on the same cause of action, (2) involved the same parties or their privies, and (3) resulted a final judgment on the merits. *Chaney Bldg. Co. v. City of Tucson*, 716 P.2d 28, 30 (Ariz. 1986). The parties do not dispute the existence of a final judgment in the Arizona Lawsuit or

---

[3] The parties and much of the relevant case law refer to the doctrine of *res judicata*. *Res judicata* is widely considered to consist of two concepts: issue preclusion and claim preclusion. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). "Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Id.* The Supreme Court of the United States has stated a preference for the use of the more precise term of "claim preclusion" where appropriate. *Id.* Because the issue here is the effect of a previous judgment on the present proceedings, this Report and Recommendation employs the more exacting term of "claim preclusion," rather than *res judicata*.

that the parties here are identical to those named in that suit. The Court therefore needs only to determine whether the causes of action presented are the same for claim preclusion purposes.

### 1. Evaluation of the Causes of Action Under Arizona's "Same Evidence" Test

Arizona employs the First Restatement of Judgments' "same evidence" test to determine whether a subsequent cause of action is the same as a prior one. *See Pettit v. Pettit*, 189 P.3d 1102, 1105 (Ariz. Ct. App. 2008) (citing Restatement of Judgments § 61 (1942) ("[T]he plaintiff is precluded from subsequently maintaining a second action based upon the same transaction, if the evidence needed to sustain the second action would have sustained the first action.")). Under the same evidence test, if different or additional evidence is needed to prevail on the latter cause of action, then claim preclusion does not bar the second suit, even if the cause of action arose out of the same transaction.[4] *See Phoenix Newspapers, Inc. v. Dep't of Corrs.*, 934 P.2d 801, 804 (Ariz. Ct. App.1997) (citing *Rouselle v. Jewett*, 421 P.2d 529, 532 (Ariz. 1966)).

Unlike issue preclusion, which applies only to issues that were actually litigated, claim preclusion bars claims based on facts actually litigated and those which might have been litigated or could have been determined from the pleadings. *Pettit*, 189 P.3d at 1106 (citation and quotation omitted); *Suttle v. Seely*, 382 P.2d 570, 572 (Ariz. 1963). As a result, a party must bring forward her whole case; she may not split her cause of action and bring successive suits

---

[4] The modern trend, and the test used in many jurisdictions outside of Arizona, assesses the identity of causes of action under the Second Restatement of Judgments' "transactional test." *See Phoenix Newspapers, Inc. v. Dep't of Corrs.*, 934 P.2d 801, 804 (Ariz. Ct. App. 1997); *see also* 18 Charles A. Wright et al., Federal Practice and Procedure § 4407 (2002); Restatement (Second) of Judgments § 24. Under this test, a subsequent cause of action is precluded if it arises from a nucleus of operative facts common to a former cause of action. *See* Restatement (Second) of Judgments § 24, cmt. b. The subsequent cause of action is barred regardless of the number of substantive theories available to the plaintiff, the variant forms of relief flowing from those theories, any differences in the evidence needed to support them, and the number of rights invaded. *See id.* at cmt. a. Under the transactional test, this lawsuit would be barred by claim preclusion because it arises out of the same surgeries as the Arizona Lawsuit.

involving different theories on the same set of factual circumstances that might have been litigated in the original suit. *See Bayless v. Indus. Comm'n of Ariz.*, 880 P.2d 654, 659 (Ariz. Ct. App. 1993); *Wilson v. Bramblett*, 371 P.2d 1014, 1016 (Ariz. 1962).

Daram's complaint in the Arizona Lawsuit specifically notes a claim for "medical malpractice" and goes on to allege that Ptak "misled her" and "intentionally with-held information about the procedure to draw her in." (Arizona Compl., Ex. A at 1, Attached to Kine Aff.). Her Minnesota Complaint lists three causes of action: medical malpractice, breach of contract, and fraud based on Ptak's conduct. Thus, the issue is whether these subsequent causes of action require different or additional evidence.

### i. Medical Malpractice Claims

Daram's Minnesota Complaint contends that Ptak should have revealed that lumps were a "consequence" of the technique used to perform fat grafting surgery and that failure to disclose that consequence constitutes medical malpractice. (Minnesota Compl. at ¶ 22). She attempts to distinguish the current suit from the Arizona Lawsuit where she alleged that Ptak's failure to disclose lumps as "risk" of the fat grafting surgery established a claim for medical malpractice. *See* (Arizona Compl., Ex. A, Attached to Kline Aff.); (Pl.'s Mem. in Opp. to Mot. for Summ. J., Ex. D at 4–5, Attached to Kline Aff.). Essentially, Daram is arguing that consequences are different than risks—a meaningless distinction here, legally and linguistically. Relying on a purported concession by Kline during the summary judgment hearing in the Arizona Lawsuit to make this distinction, Daram argues Kline "admitted that lumps are a consequence of fat grafting . . . ." and contends that "[t]he new claims made in [the] Minnesota Complaint are based on these new facts that could not have been litigated" in the prior suit. (Minnesota Compl. at ¶ 19); (Pl.'s Mem. at ¶ 4).

Kline's statements or purported admissions are not evidence. *See London v. Green Acres Trust*, 765 P.2d 538, 543 (Ariz. Ct. App. 1988) ("A statement by counsel is not a finding by the court, nor is it evidence before the court."); *see also State v. Hernandez*, 823 P.2d 1309, 1316–17 (Ariz. Ct. App. 1991). An attorney's statements or arguments are offered to present their case and assist the court in understanding the facts and applicable law. Kline's statements cannot provide a basis for a distinct cause of action and, consequently, overcome claim preclusion.

Nevertheless, Kline's statements and any claims related thereto could have been, and were, litigated in Arizona. Daram presented Kline's statements to the court as the primary basis for her Motion for New Trial, arguing that Kline "made an admission that the lumps are a structural part of the graft." (Pl.'s Mot. For New Trial, Ex. J at 1–2, Attached to Kline Aff); *see also* (Pl.'s Reply of Mot. for New Trial, Ex. L at 1–2, Attached to Kline Aff.). The Arizona court denied her motion, concluding there was "sufficient evidence to justify the Court's prior determination." (Minute Entry on Pl's Mot. For New Trial, Ex. M at 1, Attached to Kline Aff.). In doing so, the court also held that Daram "failed to provide any evidentiary or legal basis warranting a reconsideration of [its] prior order." (*Id.*). Thus, Daram presented this issue to the Arizona court, it was actually litigated there, and, therefore, claim preclusion bars its litigation here. *See Pettit*, 189 P.3d at 1106; *see also Chaney Bldg. Co. v. City of Tucson*, 716 P.2d 28, 30 (1986) (considering issue preclusion and explaining that "[w]hen an issue is properly raised by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated." (citing Restatement (Second) of Judgments § 27 cmt. d)).

Alternatively, even if Kline's statement is considered evidence and the issue was not litigated in the Arizona Lawsuit, the statement does not support a separate and distinct cause of action. In the Arizona Lawsuit, Daram's medical malpractice action was based on Ptak's failure

12

to disclose "risks" associated with the procedure. Here, his alleged failure to disclose the "consequences" of the procedure provides the basis for Daram's claims. The difference is purely semantical. Daram's own explanation of the differences between these medical malpractice claims at the hearing on this Motion evidences this: "I'm not alleging that defendant failed to disclose **risks** associated with these procedures. I'm stating that he failed to disclose that [lumps] are a **consequence** because they are used as a structural part of the fat grafting." (*Sarojini Daram v. Jeffrey J. Ptak M.D., P.C.*, (11CV3266), May 3, 2012). Simply renaming a "risk" of surgery as a "consequence" of that surgery cannot allow Daram to avoid issue preclusion. Furthermore, to the extent Daram maintains that a difference exists between the claims, the current cause of action requires the same evidence as the Arizona medical malpractice cause of action—evidence of the existence of the lumps, how they developed, and what Ptak revealed before the procedures. Consequently, Daram's Minnesota medical malpractice claim cannot overcome Arizona's same evidence test; because it could have been raised in the previous action, claim preclusion bars it from being asserted here.

### ii.   Breach of Contract and Fraud Claims

Daram did not assert claims for breach of contract or fraud in the Arizona Lawsuit. Nevertheless, both causes of action rely on the same facts and evidence underlying the previously dismissed medical malpractice claim. As a result, they are now barred by claim preclusion. *Pettit*, 189 P.3d at 1106 (citation and quotation omitted); *Suttle*, 382 P.2d at 572.

The "contract" contemplated in Daram's breach of contract claim is Ptak's surgical consent form. (Minnesota Compl. at ¶ 26). She alleges that Ptak's failure to provide written notice of the risks associated with fat grafting violated a provision of the consent form that provides that "[t]he specific risks and complications of each surgical procedure have been

13

explained elsewhere in this preoperative packet." (*Id.* at ¶¶ 26–28). In the Arizona Lawsuit, Daram took this alleged breach of contract claim a step further and used it as part of the basis for her medical malpractice claim. (Arizona Compl., Ex. A, Attached to Kline Aff.); (Pl.'s Mem. in Opp. to Mot. for Summ. J., Ex. D at 2–5, Attached to Kline Aff.). In other words, her current breach of contract claim was a component of her dismissed Arizona medical malpractice claim.

Similarly, Daram's fraud claim is a piece of her Arizona medical malpractice claim. The fraud claim is based on Ptak's alleged intentional misrepresentations that there were no risks associated with the procedure other than swelling and bruising. (Minnesota Compl. at ¶ 30). In the Arizona Lawsuit, Daram alleged that Ptak committed medical malpractice, in part, because he "intentionally with-held information about the procedure to draw [her] in," "deliberately manipulated her," and did not disclose the known risks of the procedure. (Arizona Compl., Ex. A, Attached to Kline Aff.); (Pl.'s Mem. in Opp. to Mot. for Summ. J., Ex. D, Attached to Kline Aff.).

Daram cannot dissect her previous cause of action and assert new theories from the facts on which the previous case relied. If she wished to assert distinct claims for breach of contract and fraud, then she was obliged with bringing them in her first action. *See Bayless*, 880 P.2d at 659; *Wilson*, 371 P.2d at 1016. The Arizona medical malpractice claim subsumed her current claims and those claims could have been litigated in the previous suit, and claim preclusion bars them.

### 2. Other Evidence Submitted by Daram

In response to Ptak's Motion, Daram filed additional evidence in an effort to overcome Arizona's same evidence test and avoid claim preclusion. Most of this evidence is outside the pleadings and, therefore, cannot be considered in determining this Motion. To the extent the

evidence may be considered, it fails to establish a cause of action distinct from those asserted in the Arizona Lawsuit.

First, Daram submitted a medical record from an appointment with a plastic surgeon that took place after the Arizona Lawsuit. This record is not necessarily embraced or referred to by the pleadings. *See Gibb*, 958 F.2d at 816; *Piper Jaffray*, 967 F. Supp. at 1152. Nor is it a matter of public record from the Arizona Lawsuit. *See Deerbrook Pavilion, LLC*, 235 F.3d at 1101. Rather, it appears this record is offered for the sole purpose of substantiating Daram's claims that the lumps are documented. *See* (Pl.'s Mem. at ¶ 8). Therefore, it is "outside the pleadings" and improper for consideration on a Rule 12(b)(6) motion. *See Hamm*, 187 F.3d at 948; *see also Stahl*, 327 F.3d at 701. Moreover, even if the Court considered this record in deciding the Motion, it does not establish a cause of action distinct from those in the Arizona Lawsuit. This is simply a more recent medical record documenting the lumps around Daram's eyes. The mere fact that the record did not exist at the time of the previous lawsuit is insufficient to surmount Arizona's same evidence test and overcome claim preclusion. In order to overcome the same evidence test, "different" or "new" evidence offered to defeat claim preclusion must advance a cause of action that was not presented in the previous litigation and could not have been asserted. *See Pettit*, 189 P.3d at 1105.

In addition, Daram stated in her response that "[a]ny photographs that Plaintiff submitted to the Arizona Court showed up as illegible documents due to an error by the Court. The Arizona dismissal could not be based on any photographic evidence." (Pl.'s Mem. at ¶ 9). The Court construes this statement as an argument that the photographs submitted in these proceedings are different or additional evidence in support of a cause of action distinct from those advanced in the Arizona Lawsuit. Although Daram did not submit any photographs along

with her response, she attached several to her Minnesota Complaint and presented additional photographs at the hearing. (Photographs, Ex. 12, Parts 1–5, Attached to Minnesota Compl.).

Only those photographs attached to the Minnesota Complaint may be considered on this Motion. To the extent the photographs presented at the hearing were not attached to the Minnesota Complaint, they are evidence "outside the pleadings" and are not proper for consideration in determining this Motion. *See Hamm*, 187 F.3d at 948; *see Stahl*, 327 F.3d at 701. As for those photographs attached to the Complaint, Daram has failed to provide any rationale as to how the photographs provide her with a basis to overcome claim preclusion, and the Court cannot determine one. Furthermore, any claims stemming from the fat grafting procedure which are documented in the photographs of Daram from before Arizona Lawsuit should have been asserted in that action. Similar to the medical record, the photographs, dated after the Arizona Lawsuit, are not different or additional evidence for purposes of overcoming claim preclusion simply because they did not exist at the time of the prior lawsuit.

### III.   DARAM'S MOTION TO COMPEL

If the recommendation to grant Ptak's Motion to Dismiss or Alternative Motion for Summary Judgment is adopted, then the entire case is terminated. *See* Fed. R. Civ. Pro. 12. This outcome would preclude any further discovery or presentation of claims. Accordingly, if the recommendation is adopted, Daram's Motion to Compel is rendered moot.

### IV.   PTAK'S REQUEST REGARDING THE FILING OF FUTURE ACTIONS BY DARAM

In his memorandum, Ptak requests an additional remedy: that the Court preclude Daram from filing subsequent actions against Ptak related to or arising out of the care she received from him and representations made during or prior thereo. (Def. Mem. at 9). As noted in the case cited by Ptak in support of this request, "this is an extreme remedy." *Yang v. City of Shakopee et*

*al*, No. 09cv3216 (PAM/JJK) (D. Minn. Dec. 30, 2009) [Doc. No. 6 at 3]. Unlike Yang, Daram has not demonstrated a "longstanding and strange vendetta" against Ptak. *Id.* at 3. Nor has she sought to use this claim "as one more weapon in [a] campaign" against Ptak. *Id.* Daram has not engaged in repetitive, malicious or frivolous litigation by filing complaints in bad faith. Rather, Daram filed this suit seeking resolution for what she believed to be a separate, new basis for relief. Nothing suggests that Daram had ill intentions or sought to harass Ptak. Furthermore, Daram has not abused judicial resources by filing a series of baseless lawsuits against various defendants in this Court as Yang did. *Yang v. City of Shakopee et al*, No. 09cv3216 (PAM/JJK) (D. Minn. Dec. 16, 2009) [Doc. No. 4 at 7–8]. The imposition of such an extreme remedy is not warranted in this situation.

The Court does caution Daram, however, that the denial of Ptak's request for this remedy is not an invitation to file another lawsuit against him. If Daram believes a subsequent lawsuit related to these surgeries is warranted—either in state or federal court—she is encouraged to secure legal representation or the counsel of any number of legal aid organizations. The advice she obtains from either of those sources will help to her determine if it is appropriate to avail herself of the courts.

## V.     CONCLUSION

Daram could have raised the causes of action she presents in her Minnesota Complaint during the Arizona Lawsuit, and claim preclusion bars her from re-packaging those issues and asserting them again. Thus, construing the Complaint in the light most favorable to Daram, there are no causes of action that would result in recovery. The Court recognizes in reaching this conclusion that the Arizona court did not resolve the dispute to Daram's satisfaction. By failing to appeal the trial court's decision through the Arizona court system, however, Daram permitted

the litigation to end in the forum where she first asserted her claims. *See* Ariz. R. App. Pro. 9 (requiring a notice of appeal to be filed no later than thirty days after entry of judgment from which appeal is taken); *see also* Ariz. Rev. Stat. Ann. § 22-262 ("procedure for appeals from a justice court to the superior court shall be as provided by rules promulgated by the supreme court"). She cannot revive that litigation by initiating an action in federal district court in Minnesota. In sum, the Court determines that the Arizona Lawsuit and the present action are based on the same claims and evidence, and that Daram previously had a full and fair opportunity to litigate the causes of action now before the Court. Accordingly, because the elements of claim preclusion are met, Daram cannot proceed with the instant suit.

## VI. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Jeffrey J. Ptak M.D., P.C.'s Motion to Dismiss or Alternative Motion for Summary Judgment [Doc. No. 9] is **GRANTED** to the extent it seeks a Motion to Dismiss.

2. Plaintiff Sarojini Daram's Motion to Compel [Doc. No. 21] is **DENIED as moot**.

3. Plaintiff Sarojini Daram's Complaint [Doc. No. 1] be **DISMISSED with prejudice**.

Dated: July 2, 2012

                                                  *s/ Steven E. Rau*_____
                                                  STEVEN E. RAU
                                                  United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **July 16, 2012**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.